

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NORBERT W. ELLIS,

    Petitioner,

v.                                            Case No. 04-C-0169

GARY R. McCAUGHTRY,

    Respondent.

## DECISION AND ORDER ON HABEAS CORPUS PETITION

### I. PROCEDURAL AND FACTUAL BACKGROUND

This action was commenced on February 14, 2004, when the petitioner, Norbert W. Ellis ("Ellis"), filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. On January 15, 1999, in the Marinette County Circuit Court, Ellis was convicted after jury trial of first degree intentional homicide and hiding a corpse, in violation of Wis. Stat. §§ 940.01(1) and 940.11(2). He was sentenced to serve life without parole. On June 20, 2000, the Wisconsin Court of Appeals affirmed his conviction and on October 17, 2000, the Wisconsin Supreme Court denied his petition for review.

Thereafter, on August 20, 2001, Ellis filed a motion for postconviction relief, pursuant to Wis. Stat. § 974.06, in the Marinette County Circuit Court. On November 1, 2002, the motion was denied by the trial court in an oral decision, and the Wisconsin Court of Appeals affirmed the circuit court's denial of Ellis' motion for postconviction relief on November 11, 2003. On January 23, 2004, the Wisconsin Supreme Court denied Ellis' petition for review.

1

Ellis' petition for federal habeas corpus relief presents three claims: (1) that his postconviction counsel was ineffective for failing to raise "constitutional issues of merit," thereby denying Ellis his right to appeal (Pet. ¶ 22.A); (2) that his trial counsel was ineffective for (a) failing to conduct an adequate investigation of his case, (b) withholding all exculpatory evidence from the defendant and the jury and presenting a single witness in defense of the charges (Pet. ¶ 22.B), (c) failing to raise that the state suborned perjury (Pet. ¶ 22.C), and (d) failing to present evidence sufficient to establish that his custodial statements were coerced (Pet. ¶ 22.D); and, (3) that statements used in his case were coerced in violation of the Fifth Amendment (Pet. ¶ 22.B).

The horrific fundamental facts supporting the prosecution of Ellis were set forth by the Wisconsin Court of Appeals in its decision affirming his conviction.

> Ellis admitted that he killed twelve-year-old Jennifer Wallace, contending that he unintentionally strangled or suffocated her. He testified that Jennifer took twelve pills in an apparent suicide attempt and that, on the way to the hospital, she tried to jump out of the car. He grabbed her and accidently choked her, his only intent being not to let her jump from a moving car. He then took her to his house to change her clothes before taking her dead body to the hospital. When the police pulled into the driveway, he quickly put her nude body in a garbage bag. He lied to the police and concealed her body. Several months later he showed the police where her body was located.

(Answer Ex. D ¶ 2.) Moreover, "Ellis admitted that his hand was on Wallace's throat for twenty to thirty seconds and he heard gasping and gurgling sounds." (Answer Ex. D ¶ 8.)

In order to demonstrate that Ellis intentionally killed Jennifer Wallace and in an effort to prove his motive and preparation in the context of Ms. Wallace's death, the State introduced testimony by several witnesses demonstrating Ellis' sexual contact with young girls. "The court admitted the other acts evidence to support the State's theory that Ellis intentionally killed Wallace after she refused his sexual advances." (Answer Ex. D at ¶ 5.)

2

> The evidence showed a pattern of separating the girls from other family members to facilitate sexual abuse, and threats or force if they tried to leave. He told friends that he preferred sex with young girls because they were still virgins and he could more easily control them. He told a friend that he would set the mood by showing them a pornographic videotape to test their reaction, and he demonstrated how he could easily put drugs in the child's drink.

(Answer Ex. D ¶ 3.) In its decision affirming Ellis' conviction, the Wisconsin Court of Appeals ruled that introduction of such evidence was not error. More particularly, the court found that

> [t]he probative value of the other acts was not substantially outweighed by the danger of unfair prejudice. While the evidence was prejudicial, it was not unfairly prejudicial. It did not encourage the jury to find Ellis guilty of the crimes charged merely because he committed other bad acts. The court gave several cautionary instructions similar to those approved in *State v. Fishnick* that serve to minimize or eliminate the risk of unfair prejudice.

(Answer Ex. D ¶ 7) (citations omitted). Moreover, the court found that any prejudice that might have arisen from the introduction of such evidence was harmless given that

> Ellis admitted that his hand was on Wallace's throat for twenty to thirty seconds and he heard gasping and gurgling sounds. He claimed for the first time at trial that he accidently choked her to death to keep her from jumping from his car, after which he inexplicably took her back home to change her clothes. He hid the body and repeatedly lied to police and Wallace's mother.

(Answer Ex. D ¶ 8.) The court concluded that "[u]nder these circumstances, his own incredible testimony established his guilt without considering the other crimes testimony." (Answer Ex. D ¶ 8.)

As previously stated, Ellis filed a postconviction motion in which he asserted that he was denied effective assistance of appellate counsel and that he was denied effective assistance of trial counsel. In affirming the circuit court's denial of Ellis' motion, the Wisconsin Court of Appeals found that Ellis did not suffer any prejudice as a result of any alleged deficient performance of either counsel. In reaching that conclusion, the court of appeals cited *Strickland v. Washington*, 466 U.S.

3

668, 694 (1984), for the two-pronged test to be applied in assessing an ineffective assistance of counsel claim. "To succeed on his claim, Ellis must show both (1) that his counsel's representation was deficient and (2) that this deficiency prejudiced him. Further, we may reverse the order of the tests and avoid the deficient performance analysis altogether if the defendant has failed to show prejudice." (Answer Ex. J ¶ 5) (citations omitted). And in reaching the conclusion that Ellis did not suffer any prejudice from any claimed deficient performance by counsel, the court of appeals stated as follows.

A. Failure to Call Witnesses

¶ 8 Ellis claims trial counsel was ineffective for failing to adequately investigate his case and call witnesses derived from an investigation. Ellis testified at trial that he killed twelve-year-old Jennifer Wallace on November 28 or 29, 1997. Ellis nevertheless argues trial counsel should have called various witnesses to assist in his defense, including witnesses who claimed they saw Jennifer alive after the date on which Ellis claimed he killed her. Ellis claims "no less than eight people [told authorities] they had seen Jennifer in different places on different dates up to December 11, 1997." As the State argues, Ellis and these witnesses could have been confused about specific dates and the witnesses could likewise have been mistaken about seeing Jennifer. In any event, because Ellis admitted killing Jennifer, the actual date of her death, within a week or two, is irrelevant. Likewise, Ellis fails to establish how it would have aided his defense to call other witnesses who were not present when Jennifer was killed. Ellis was not prejudiced by any claimed deficiency on the part of trial counsel to call these witnesses.

¶ 9 Ellis also argues trial counsel should have called a pathologist to counter the testimony of the State's pathologist, Dr. Gregory Schmunk. At trial, Dr. Schmunk opined that Jennifer's death was the result of "some homicidal violence of undetermined etiology," and further testified that although he could not conclude whether her death was due to strangulation or suffocation, "it was one of those two." Ellis testified at trial that although he did not intend to kill Jennifer, he caused her death by choking her. Ellis has failed to establish how he has been prejudiced by trial counsel's failure to call another pathologist when Ellis' own testimony substantiated Dr. Schmunk's testimony regarding the cause of Jennifer's death.

4

### B. Witness Perjury

¶ 10    Ellis also claims that trial counsel was ineffective for failing to challenge the veracity of witness testimony. Ellis argues various witnesses perjured themselves and the State failed to correct these falsehoods. The trial court concluded, however, that nothing in the record indicated the State relied on any perjured testimony. The court noted there will often be inconsistencies in witness testimony. It is the jury's function, however, to decide the credibility of witnesses and reconcile any inconsistencies in the testimony. *State v. Toy*, 125 Wis. 2d 216, 222, 371 N.W.2d 386 (Ct. App. 1985). Inconsistencies in witness testimony notwithstanding, the jury here needed only to believe Ellis' account of his actions and disbelieve his claim that Jennifer's murder was not intentional.

### C. Evidence at the *Miranda/Goodchild* hearing

¶ 11    Ellis argues trial counsel failed to present relevant evidence at the *Miranda/Goodchild* hearing to establish that Ellis' inculpatory statements were obtained in violation of his Fifth and Fourteenth Amendment rights. The trial court noted, however, that at the time of the *Miranda/Goodchild* hearing, the court was "well aware" of the evidence that Ellis claims was not presented. The court ultimately concluded:

> I really find nothing in the defendant's [WIS. STAT. § 974.06] motion about unfair police tactics that would have changed the Court's core findings, that his critical admissions were voluntary and deliberate and thought about for a long period of time, and that even if [trial counsel] was deficient in not fully developing the record as to exactly everything that was happening to Mr. Ellis during his stay in the jail . . . it certainly wasn't prejudicial.

¶ 12    As the court further indicated, Ellis failed to demonstrate that the results of the suppression hearing would have been any different, even if he had testified for hours on end as to violations he was subjected to while in jail. Ellis was not prejudiced by his trial counsel's claimed deficiency and postconviction counsel was likewise not ineffective for failing to pursue these issues. *See State v. Wheat*, 2002 WI App 153, ¶ 14, 256 Wis. 2d 270, 647 N.W.2d 441 ("Failure to raise an issue of law is not deficient performance if the legal issue is later determined to be without merit.").

(Answer Ex. J ¶¶ 8-12.)

## II. LEGAL STANDARD

Federal courts may issue a writ of habeas corpus if a petitioner demonstrates that he is "in [state] custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir.1997); *see also Del Vecchio v. Illinois Dept. of Corr.*, 31 F.3d 1363, 1370 (7th Cir.1994) (en banc) ("[F]ederal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law.").

"The provisions of the Antiterrorism and Effective Death Penalty Act ('AEDPA') . . . significantly constrain any federal court review of a state court conviction." *Searcy v. Jaimet*, 332 F.3d 1081, 1087 (7th Cir. 2003). Title 28 U.S.C. § 2254(d) provides that habeas relief may not be granted unless the state court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

"A rule is 'clearly established' only if it is compelled by existing Supreme Court precedent." *Henry v. Page*, 223 F.3d 477, 480 (7th Cir. 2000). The Supreme Court has explained the "contrary to" standard as follows:

> [A] state-court decision can be "contrary to" this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.

6

*Williams v. Taylor*, 529 U.S. 362, 405 (2000). Furthermore, "a run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Id.* at 406.

A state court decision results in an "unreasonable application" of clearly established federal law when that court either (1) "identifies the correct governing legal rule from [Supreme Court precedent] but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407; *see also Harris v. Cotton*, 365 F.3d 552, 555 (7th Cir. 2004). Moreover, "[u]nreasonable is more than just incorrect or erroneous, and therefore federal courts defer to a state court's application of Supreme Court precedent as long as it is 'minimally consistent with the facts and circumstances of the case.'" *Danks v. Davis*, 355 F.3d 1005, 1008 (7th Cir. 2004) (internal citations omitted); *see also United States ex rel. Bell v. Pierson*, 267 F.3d 544, 557 (7th Cir. 2001) ("If . . . the case falls under the 'unreasonable application' clause, then we defer to a reasonable state court decision."). Issues of fact found by a state court are presumed to be correct unless the petitioner rebuts this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Williams v. Parke*, 133 F.3d 971, 973 (7th Cir. 1997).

Before a federal court may review the merits of a habeas petition, a petitioner must: (1) exhaust all remedies available in state courts; and (2) fairly present any federal claims in state court first, or risk procedural default. *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir.2001) ("Failure to exhaust available state court remedies constitutes a procedural default."); *see also Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir.1996) (same). "The habeas petitioner must present his federal

7

AO 72A
(Rev.8/82)

constitutional claims initially to the state courts in order to give the state 'the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" *McGowan v. Miller*, 109 F.3d 1168, 1172 (7th Cir.1997) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). This means that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Although interrelated, courts have discussed exhaustion of state remedies and procedural default as separate issues.

A petitioner has exhausted his state court remedies "by either (a) providing the highest court in the state a fair opportunity to consider the constitutional issue, or (b) having no further available means for pursuing a review of one's conviction in state court." *Wallace v. Duckworth*, 778 F.2d 1215, 1219 (7th Cir.1985).

The procedural default hurdle forbids the federal courts from addressing claims that were not fairly presented to the state court. *Jones v. Washington*, 15 F.3d 671, 675 (7th Cir.1994), *overruled on other grounds by Hogan v. McBride*, 74 F.3d 144, 147 (7th Cir. 1996). Procedural default occurs either when a state court has declined to address a federal claim because the petitioner failed to satisfy an independent state procedural requirement, *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991), or when the petitioner fails to present a claim to the state courts at the time, and in the way, required by the state. *Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir.1996).

Under the doctrine of procedural default, a federal habeas court will not review defaulted claims unless the petitioner demonstrates either (1) cause for the procedural default and actual prejudice resulting from the alleged violation of federal law, or (2) that failure to consider the claims would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 749-50. The petitioner

8

bears the burden of establishing that his procedural default is excused by one of these two exceptions. *See McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991).

To satisfy the cause and prejudice standard, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The petitioner must also show that the errors of which he complains "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494 (emphasis in original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). To demonstrate that a fundamental miscarriage of justice would result from a refusal to consider the defaulted claims, the petitioner is required to show that he is "actually innocent." *See Bousley v. United States*, 523 U.S. 614, 622 (1998).

### III. DISCUSSION

As stated previously, Ellis' petition for federal habeas corpus relief presents three claims: (1) that his postconviction counsel was ineffective for failing to raise "constitutional issues of merit," thereby denying Ellis his right to appeal (Pet. ¶ 22.A); (2) that his trial counsel was ineffective for (a) failing to conduct an adequate investigation of his case, (b) withholding all exculpatory evidence from the defendant and the jury and presenting a single witness in defense of the charges (Pet. ¶ 22.B), (c) failing to raise that the state suborned perjury (Pet. ¶ 22.C), and (d) failing to present evidence sufficient to establish that his custodial statements were coerced (Pet. ¶ 22.D); and, (3) that statements used in his case were coerced in violation of the Fifth Amendment (Pet. ¶ 22.B).

### A. Ineffectiveness of Postconviction Counsel

In his habeas corpus petition Ellis asserts that his postconviction, i.e. appellate, counsel provided ineffective assistance by refusing to advance any claim regarding "the obvious use of police

9

suborned perjury in the other acts evidence, as well as other claims." (Pet. ¶ 22.A) However, as the respondent points out in his brief, the Wisconsin Court of Appeals relied on Ellis' claim of ineffective assistance of postconviction counsel to directly review the claims he later presented in his § 974.06 motion. The court of appeals stated:

> Although Ellis' underlying claims would otherwise be procedurally barred under both WIS. STAT. § 974.06(4) and *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W.2d 157 (1994), Ellis avoids the strictures of *Escalona* by arguing that postconviction counsel was ineffective for failing to challenge the effectiveness of his trial counsel or pursue various issues during his initial postconviction proceedings. In *State ex rel. Rothering v. McCaughtry*, 205 Wis. 2d 675, 683, 556 N.W.2d 136 (Ct. App. 1996), this court acknowledged "that ineffective postconviction counsel could be a sufficient reason permitting an additional motion for postconviction relief under [§974.06], thereby making the remedy under §974.06 an adequate and effective remedy for the alleged errors."

(Answer Ex. J ¶ 3 n.3.) Indeed, in its November 11, 2003 decision the court of appeals did address the claims which were set forth in Ellis' § 974.06 postconviction motion. In other words, by addressing in its decision of November 11, 2003, those claims which Ellis argues should have been advanced previously by his appellate counsel, the court of appeals did in fact provide to Ellis the remedy to which he claimed entitlement, i.e., appellate review of those claims. Such being the case, to the extent that Ellis' habeas corpus petition seeks relief predicated on being denied effective assistance of appellate counsel, his petition will be denied.

## B. Ineffective Assistance of Trial Counsel and Coerced Custodial Statements

Ellis asserts that his trial counsel was ineffective by (a) failing to conduct an adequate investigation of his case, (b) withholding all exculpatory evidence from the defendant and from the jury and presenting a single witness to the jury in Ellis' defense, (c) failing to raise that the State

10

suborned perjury, and (d) failing to present evidence sufficient to establish that Ellis' custodial statements were coerced in violation of the Fifth Amendment.

To reiterate, the federal courts may not grant habeas relief under Section 2254 unless the state court's judgment "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A rule is 'clearly established' only if it is compelled by existing Supreme Court precedent." *Henry*, 223 F.3d at 480. A state court decision results in an "unreasonable application" of clearly established federal law when that court either (1) "identifies the correct governing legal rule from [Supreme Court precedent] but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407; *see also Harris*, 365 F.3d at 555.

The Wisconsin Court of Appeals identified correctly the law that was to be applied in assessing Ellis' claim that he was denied effectiveness of counsel, to wit, *Strickland v. Washington*, 466 U.S. 668 (1984). The court of appeals also correctly noted that, if there was no showing that the defendant had been prejudiced by any claimed deficient performance, then it was not necessary for the court to address the first prong of the *Strickland* two-part test, i.e., whether there was deficient performance. Such being the case, this federal habeas court's review in the instant case is limited to deciding whether the Wisconsin Court of Appeals' judgment involved an unreasonable application of the prejudice component of *Strickland's* two-prong test. Stated another way, the limited issue that

11

this court must decide is whether the Wisconsin Court of Appeals unreasonably applied the prejudice component of *Strickland's* two-prong test to the facts of Ellis' case. In my opinion, the Wisconsin Court of Appeals clearly did <u>not</u> unreasonably apply the prejudice component to Ellis' case.

In *Strickland* the court held that

> [a] convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687. In order to prove the second prong of a *Strickland* violation, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

At its core, Ellis' claim that his trial counsel was ineffective (1) for failing to conduct an adequate investigation, (2) for withholding exculpatory evidence from the defendant and the jury, and (3) for failing to raise that the State suborned perjury, is predicated at least in part on the supposed fact that a number of persons had seen Jennifer Wallace alive after November 28, 1997; more precisely, that several persons had seen her alive, and with her mother, on or about December 11, 1997.

The Wisconsin Court of Appeals reasonably found that such testimony, had it been offered, was irrelevant. The bottom line is that Ellis himself admitted on the witness stand that he had killed Jennifer Wallace. Whether or not the date on which he killed her was November 28, November 29,

12

or some other date, is of no moment. Moreover, none of the witnesses who had supposedly seen her on December 11, 1997, were present at the time Ellis killed Jennifer Wallace. Such being the case, even if evidence had been offered to suggest that some persons had supposedly seen Jennifer Wallace subsequent to the date on which Ellis admitted killing her it would have gone nowhere to prove that he had not killed her. Simply stated, Ellis did not demonstrate in the Wisconsin state courts that, had trial counsel introduced such evidence, there is a reasonable probability that the result of his trial would have been different. That the Wisconsin state court came to such a conclusion was certainly not unreasonable. To the contrary, it was eminently reasonable. Thus, to the extent that Ellis claims he is entitled to federal habeas corpus relief because his trial counsel was ineffective in such fashion, his claim is rejected.

Moreover, with respect to Ellis' claim that the State suborned perjury the court of appeals stated as follows:

> The trial court concluded, however, that nothing in the record indicated the State relied on any perjured testimony. The court noted there will often be inconsistencies in witness testimony. It is the jury's function, however, however, to decide the credibility of witnesses and reconcile any inconsistencies in the testimony. *State v. Toy*, 125 Wis. 2d 216, 222, 371 N.W. 2d 386 (Ct. App. 1985). Inconsistencies in witness testimony notwithstanding, the jury here needed only to believe Ellis' account of his actions and disbelieve his claim that Jennifer's murder was not intentional.

(Answer Ex. J ¶ 10.) In other words, the court of appeals, relying on the circuit court's determination that nothing in the record indicated that the State relied on any perjured testimony, found that Ellis had failed to show deficient performance by his trial counsel. Given the trial court's finding, it follows that the court of appeals' ruling in this regard was not unreasonable. Consequently, to the extent that Ellis claims he is entitled to federal habeas corpus relief because his trial counsel was ineffective in such fashion, his claim is rejected.

13

Ellis also claims that his trial counsel was ineffective because he failed to secure an expert to testify on Jennifer Wallace's cause of death. He argues in his reply that "[c]ounsel[']s failure to secure his own expert deprived the jury of a[] factual accounting of the autopsy results, and by doing so that act did undermine the confidence of the outcome of the trial." (Pet'r's Reply at 5.) Ellis seems to suggest that an expert would have cast doubt on the State's expert's opinion that death was caused by strangulation or suffocation. However, it is impossible to see how Ellis was prejudiced by trial counsel's failure to call an expert to counter such opinion. Once again, it is important to recall that Ellis testified at trial that Jennifer Wallace died as he was attempting to prevent her from getting out of his car and, as he was doing so, had his hands around her throat for twenty or thirty seconds and heard gasping or gurgling sounds. In the face of such testimony, Ellis failed to persuade the Wisconsin state courts that the testimony of an expert to counter the State expert's opinion on cause of death would have given rise to a reasonable probability that the result of the proceeding would have been different. That conclusion by the Wisconsin state courts was not unreasonable. Once again, it was entirely reasonable. Thus, to the extent Ellis' habeas corpus petition is predicated on such claim, his petition must be denied.

Finally, Ellis claims that his trial counsel was ineffective for failing to more fully develop evidence to demonstrate that Ellis' custodial statements were coerced. Relatedly, Ellis also claims that his custodial statements were indeed coerced in violation of his rights under the Fifth Amendment.

Regardless of whether Ellis' trial counsel was arguably ineffective for not initially more fully developing evidence to show that Ellis' custodial statements should have been suppressed for involuntariness, the fact remains that in its ruling on Ellis' postconviction motion, the trial court

14

ruled that Ellis' custodial statements were <u>not</u> in any fashion coerced or involuntary.[1] Specifically, the trial court stated as follows.

> Now, regarding the <u>Miranda Goodchild</u> hearing, as we all know, that hearing took the better part of four different days, and the Court was aware of the physical attack by Special Agent Mueller of the FBI, and the physical shoving incident with O'Neill up in the Marinette County jail, wherein Bates stepped in between the defendant and O'Neill and broke it up. These were well-documented in the record, and the Court dealt extensively with these incidents in its decision on the record of day four, which was November 12, 1998.
>
> I was well aware of the basics of the defendant's custody down in Oconto County, as well as here in Marinette County. I was aware that he was held in custody from I think mid December, 97, to early April, 1998, when a series of critical statements were made to Craig Bates of the Marinette County Sheriff's Department. I think they are dated maybe March 30th, March 31st, maybe April 1st or 2nd, a series of two orally or four different statements that were highly damaging to the defendant's self interest. I'm aware that the defendant claimed that he wasn't treated fairly in the jail at various times, and that I was aware that, you know, the State used tactics like trying to put an undercover officer in, with, or near the defendant during his incarceration to see if the undercover officer could get the defendant to make some incriminating statements, but in the final analysis the Court made extensive findings as to the experience and sophistication of the defendant, as well as the age of the defendant.
>
> I believe at the time of the three and a half months of incarceration he was 48 years old. The Court specifically found that he was his own man and was calling his own shots, and there were numerous times when he decided to talk to his attorney and not talk to his attorney, be talking to his attorney at the same time he was talking to law enforcement. Jane Krueger Smith, at least for the first part of that incarceration I believe was representing him, and I think the record would demonstrate she repeatedly told Mr. Ellis to keep his mouth shut and not to say anything, that Bates was going to be after him to disclose incriminating information and that she should not – or that the defendant should not talk to any law enforcement officers.

---

[1] The respondent argues that Ellis procedurally defaulted his claim that statements which led to Jennifer's body were not voluntary and, thus, violated the Fifth Amendment. According to the respondent, the only claim properly before this court is Ellis' claim that his trial counsel was ineffective for having failed to more fully advance the involuntariness claim in the circuit court. The fact that the circuit court actually decided that Ellis' statements were voluntary, coupled with the fact that the court of appeals relied on such finding in rendering its decision, would seem to render somewhat moot the respondent's procedural default argument.

15

The Court found either explicitly or implicitly that the defendant was not intimidated by Waugus or O'Neill or anybody else, that the statements he made to the police that the defendant now characterize[s] as bizarre and now somehow indicative [of] a lack of competency or some indicative of the law enforcement breaking down the defendant's will to resist, was really game playing by the defendant.

In fact, at the defendant's trial on day four, he repeatedly told the jury that he was playing games with the cops, and he was making the cops chase their own tails, and this, I think, is highly indicative of the defendant's stay in the jail, that he had control of the situation, he decided, you know, who he wanted to talk to and what he wanted to say, and that in the final analysis he made a decision because he liked Craig Bates, or for whatever reason. Bates took care of some creature comforts. Bates was instrumental in getting the defendant access to his wife, or exwife, and his son so they could have some conversations together. Bates was going to retire and the defendant made a decision, for a number of different reasons, to finally give Bates what he wanted prior to or at the time of his retirement which was the recovery of Jennifer Wallace's body.

I found on the record of that motion hearing day four that the defendant felt genuine remorse. He felt sorry for Jennifer's family. I think he wanted to give his car to Jennifer's mother, somehow to try make amends, and I think it was bothering him that Jennifer was out in the woods, and he wanted to get her a proper burial. I think there is evidence in the record that after the murder he went out there several times. I think he felt bad about the situation and felt that he wanted to do something for the family and maybe do something for Craig Bates and made a voluntarily [sic] decision to ultimately take Bates to the body.

I really find nothing in the defendant's 974.06 motion about unfair police tactics that would have changed the Court's core findings, that his critical admissions were voluntary and deliberate and thought about for a long period of time, and that even if Attorney Carns was deficient in not fully developing the record as to exactly everything that was happening to Mr. Ellis during his stay in the jail for that period of three and a half months, it certainly wasn't prejudicial. I think the defendant has failed to demonstrate that the results of the suppression hearing would have been any different, even if the defendant had testified for hours on end as to violations he now claims happened to him while up in the - - the jail. It simply doesn't change the results of the suppression hearing. The ruling would have been the same. The statements to Bates would have come in, and of course, we know that they were highly damaging because the jury ultimately learned that the defendant took Bates and other officers to Jennifer's body.

16

AO 72A (Rev.8/82)

(Answer Ex. M at 18-22.) Significantly, and as noted in its remarks, the trial court expressly held that there was nothing presented in Ellis' § 974.06 motion about "unfair police tactics" that would have altered the court's "core" finding that Ellis' statements were "voluntary and deliberate and thought about for a long period of time." In turn, the court of appeals ruled that, given the trial court's holding, Ellis had failed to demonstrate that he was prejudiced by trial counsel's claimed failure to more fully develop evidence to support the involuntariness of Ellis' custodial statements.

As noted previously, 28 U.S.C. § 2254(d)(2) provides that habeas relief may not be granted unless the state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." And issues of fact (such as voluntariness) found by a state court are presumed to be correct unless the petitioner rebuts this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Williams*, 133 F.3d at 973. Simply stated, Ellis has not overcome the presumption of correctness that is attendant to the trial court's findings on the voluntariness of Ellis' custodial statements with clear and convincing evidence, as opposed to mere argument. Because he has not done so, the trial court's ruling that his statements were voluntary must stand.

And because that ruling must stand, it follows that the court of appeals' ruling that Ellis was not prejudiced by his counsel's failure to somehow more fully develop evidence in support of the involuntariness of his custodial statements must also stand. Stated another way, the court of appeals' decision was not an unreasonable application of *Strickland* precisely because Ellis has not shown "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Finally, in his reply Ellis asserts that

17

> [i]t is not unreasonable to believe that *if* trial counsel had done his job, and the evidence discussed in all briefs had been investigated and presented to jury, the petitioner[']s testimony (if any) would have been substantially different, changing the outcome of the trial.

(Pet'r's Reply at 5.) In other words, Ellis would like a "do over." Indeed, Ellis' remarks seem to suggest that, were he to be re-tried, he would testify differently than he did at his original trial. But, it is not the purpose of a federal habeas corpus petition to afford a convicted criminal defendant an opportunity to re-testify so that he might re-tailor his testimony to the evidence. Rather, the purpose of the federal writ of habeas corpus is to afford relief to persons who demonstrate that they are "in [state] custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). For all the reasons set forth above, Ellis has failed to demonstrate that he is in custody in violation of the Constitution or laws of the United States. Consequently, Ellis' petition for writ of habeas corpus will be denied and this action will be dismissed.

**NOW THEREFORE IT IS ORDERED** that Ellis' petition for writ of habeas corpus be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

SO ORDERED this 17th day of June 2005, at Milwaukee, Wisconsin.

WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge

18